MILLER et al. v. LAYNE & BOWLER CO.

(Court of Civil Appeals of Texas. El Paso. Oct. 31, 1912. On Rehearing, Nov. 27, 1912.)

1. PLEADING (§ 174*) — ANSWER — SUPPLEMENTAL PETITION—RESPONSIVENESS.

An allegation of the supplemental petition in an action on a note given for work in drilling a well, denying that plaintiff had guaranteed that the water was of a certain quality, was responsive to the allegation in the answer that, after the development of a well, plaintiff represented that the water equalled 1,000 gallons per minute of a quality suitable for rice irrigation, and the note was executed in consideration of such representations.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 342; Dec. Dig. § 174.*]

2. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—RULINGS ON PLEADINGS.

Any error in overruling an exception in an action on a note given for drilling water wells, to an allegation of the supplemental petition denying that plaintiff guaranteed that the water was any certain quality, on the ground that such allegation was not responsive to any issue, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

3. CONTRACTS (§ 198*)—CONSTRUCTION—DIGGING WELLS.

A contract for drilling water wells provided that the contractors agreed to furnish all material and labor to put down "a test well for water," and that, in case they find sufficient wa-

ter-bearing strata to justify them in doing so in their opinion, from which a supply not less than 800 gallons per minute could be obtained "suitable for irrigation" purposes as shown by test wells, they will develop it, and that the contractors do not guarantee a well of any certain quantity of water, and the contract is made upon the express understanding that, if the contractors fail to obtain water, they shall be under no obligation to the owners, but that, if they should not succeed in getting a well which would produce 800 gallons per minute, they should receive no pay, but, if the well would produce 800 gallons per minute, the owners shall pay the sum named. *Held*, that the contractors were not required to obtain water suitable for irrigation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 861–883; Dec. Dig. § 198.*]

4. TRIAL (§ 251*)—INSTRUCTION—ISSUES.

Even though an issue be raised by the evidence, it should not be submitted as such to the jury unless raised by the pleadings.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 834–839; Dec. Dig. § 251.*]

5. FRAUD (§ 28*)—ACTS CONSTITUTING.

If a test well was drilled by a contractor according to his contract, the fact that after it was completed he made untrue representations as to the quality of the water would not constitute actionable fraud so as to be a defense to an action on a note given for the work.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 8, 26; Dec. Dig. § 28.*]

6. COMPROMISE AND SETTLEMENT (§ 15*)—EFFECT.

Where persons for whom a water well was drilled were not satisfied with it when it was completed, and the note given for the work was not executed until the parties had considerable negotiations and some mutual concessions were made, the owners would be precluded from denying the validity of the note on the ground that it was obtained by false representations as to the quality of the water; it having been executed in compromise of existing differences.

[Ed. Note.—For other cases, see Compromise and Settlement, Cent. Dig. §§ 51–53; Dec. Dig. § 15.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by the Layne & Bowler Company against Anson Miller and others, in which defendants pleaded set-off. From a judgment for plaintiff, defendants appeal. Affirmed.

Harbert Davenport, of Brownsville, and J. H. Davenport, of Houston, for appellants. Andrews, Ball & Streetman, of Houston, for appellee.

HIGGINS, J. Appellee, a corporation, entered into a written contract with Anson Miller and Sylvester Shaffer, appellants, by the terms of which appellee, as contractor, agreed with appellants, as owners, to put down on certain land of the owners a test well for water. Those portions of the contract material to a consideration of the rights of the parties are as follows: "(a) Contractors agree to furnish all the material, machinery and labor except hereinafter stated necessary to put down on the land of the owners, hereinafter described, a test well for water. (b) The contractors further agree that, in case they encounter sufficient water-bearing strata to justify them doing so, in the opinion of the contractors, from which a supply of water of not less than eight hundred (800) gallons of water per minute can be obtained suitable for irrigation purposes as shown by test well, they will develop same. (c) The contractors do not guarantee a well of any certain quantity of water, and this contract is made by the contractors only upon this express understanding: That if, for any reason, whatever, the contractors should fail in their attempt to obtain water, the contractors shall be under no obligation to the owners whatsoever, and no liability shall rest upon them on account of the making of this contract. In this connection, however, it is understood and agreed that, if the contractors should not succeed in getting a well that will produce eight hundred (800) gallons of water per minute, they are to receive no pay under proposition No. 2 of this contract. They are, nevertheless, to have the right to remove such of their material as they desire. (d) If, however, the well put down is capable of producing eight hundred (800) gallons of water per minute, when pumped to its capacity, the owner shall pay to the contractors the sum of $799.78, which will include a No. 6 Layne Ball-Bearing New Model Pump and one 24″ steel pit properly set by the use of the Layne interlocking coupling device and 20′ of screen to each 100′ of hole drilled. In addition to this, the owners agree to pay to the contractors the sum of $5.50 per foot on the total depth of the hole, and $5 per foot for each additional foot of screen used in excess of 20′ to each 100′ of hole drilled. (e) The owners agree to pay to the contractors full settlement in cash the foregoing amounts as soon as well has tested eight hundred (800) gallons of water per minute."

By virtue of said contract appellee proceeded to bore a well upon the land described in the contract, and at a depth of 482 feet they encountered a water-bearing strata which they proceeded to develop; but being unable to obtain a flow of 800 gallons per minute, as provided by the contract, they proceeded deeper, and at a depth of about 900 feet they encountered another water-bearing stratum, which they developed, and produced a flow of 1,020 gallons of water per minute. Some controversy then arose between the parties as to whether or not the well complied with the contract, but appellants finally executed in payment therefor their joint and several promissory note in the sum of $3,918.90 in favor of appellee, with interest and attorney's fees, and upon which this suit is based. Appellants answered, admitting the execution of the note described in the petition, and admitted that

plaintiff had a good cause of action, except as same was avoided by reason of the special defenses thereafter pleaded, and which will be hereafter adverted to. Upon trial the jury was given a peremptory instruction to find in favor of appellee upon the note sued upon. As to certain items pleaded in offset by defendants, the issues involved therein were submitted to the jury, and upon this crossbill the jury found in their favor in the sum of $300, which was deducted from the amount due upon the note sued upon, and judgment rendered accordingly, from which appellants prosecute this appeal, assigning numerous errors alleged to have been committed. We will not discuss the assignments in detail, for the reason that the issues involved upon this appeal are few, and the various assignments are but repetitions presenting in different forms these issues.

[1] In appellants' answer it was averred that, after the development of the 900-foot well, appellee stated and represented that the water produced therefrom equalled 1,000 gallons per minute, of a quality suitable for rice irrigation, and that, in consideration of these representations, defendants executed the note sued upon. Appellee in a supplemental petition denied that it had guaranteed that the water was of any certain quality, and to this allegation appellants excepted upon the ground that it was not responsive to any issue raised by their answer and was immaterial and irrelevant.

[2] If their contentions were correct, the overruling of the exception would have been harmless error. But we think it was responsive to the allegation in their answer that the note was executed in consideration of representations and assurances that the water produced from the well was suitable for rice irrigation. Passing to a consideration of the correctness of the court's action in peremptorily instructing the jury to find in favor of the appellee upon the note sued upon, we think the court committed no error in this respect.

[3] In the first place, a careful consideration of the contract will disclose that it imposed no obligation upon the Layne & Bowler Company to produce a well whose water would be suitable for rice irrigation; they obligated themselves, by the clause which we have designated as "a," merely to put down "a test well for water." Clause "b" is the only one which even hints at any obligation to produce water of any given quality, and this obligation has reference to the developing of the well and the water after it has been bored, rather than to its original boring. In other words, this clause imposes upon them an obligation to develop the water after they reached the water-bearing stratum, in the event only the contractor was of the opinion that it was suitable for irrigation purposes and would produce not less than

800 gallons per minute. The only thing which the contractor guaranteed under the contract was that the well should produce 800 gallons of water per minute; all of which is more fully shown by the remaining clauses "c," "d," and "e"—especially clause "e," which provides that the owners would pay as soon as the well has tested 800 gallons of water per minute, the condition of payment being dependent upon amount, and not quality. We think the construction which we place upon this contract clearly correct; but, if we should be in error in this respect, defendants' answer is insufficient to raise the issue of want of failure of consideration upon which the defense is predicated.

[4] A careful examination of the defendants' answer discloses that it is nowhere alleged that, under the terms of the contract entered into between the parties, the appellee was under any obligation to bore a well which would produce water suitable for irrigation purposes; and, in the absence of any such allegation, it would have been error for the court to have submitted such an issue, even if it were raised by the evidence. Loving v. Dixon, 56 Tex. 75; Railway Co. v. Silegman, 23 S. W. 298; Traction Co. v. Jamison, 38 Tex. Civ. App. 55, 85 S. W. 305. It is true it is alleged in the answer that, after the well had been developed, the appellee represented to and assured appellants that the water was suitable for rice irrigation, and that the note was executed in consideration solely of these representations; but this is not sufficient to relieve appellants from the necessity of directly averring that the contract required them to produce water suitable for rice irrigation, and it does not raise the issue of a failure of consideration. If their contract did not require them to furnish a well producing water adapted to such purposes, the fact that they may have made such representations and assurances after completion would not then impose such an obligation upon them. As to the issue of fraud suggested by the alleged falsity of the statements made in regard to the quality of the water, appellants' answer does not seem to have been based upon fraud alleged to have been perpetrated in procuring the note, defendants treating the same as raising the issue of a want of consideration rather than fraud; and we do not think the answer sufficient to raise any issue of fraud in the execution and delivery of the note.

[5] But if the answer could be properly so treated as sufficient, under the view which we take of the rights of the parties as determined by the written contract entered into between them, no such issue of fraud could be raised by the mere fact that, after it had completed its contract in accordance with the terms thereof, appellee may have made representations in regard to the quality of the water which were not in fact true,

as its right to compensation had been fixed by compliance with the terms of its contract.

[6] Furthermore it is apparent, from the testimony of the defendants themselves, that they were not satisfied with the well when it was developed, and the note was not executed until considerable negotiations had taken place between the parties and some concessions made by appellee in regard to off-sets and counterclaims asserted by the appellants. Under such circumstances, appellants would be precluded from denying the validity of the note, because it was executed in settlement and compromise of the differences then existing between the parties.

With reference to certain issues of partnership and issues in regard to the original contract and the alleged supplemental contract, these are of no merit. In reply thereto, it is sufficient to say that this suit and plaintiff's cause of action herein is based upon the joint and several promissory note of appellants, and these questions could not arise under those circumstances.

Affirmed:

### On Rehearing.

Appellants' motion for rehearing herein is overruled. In our original opinion we stated what we conceived to be all of the material facts in the case, but appellants have filed motion for additional conclusions of fact, and, in deference to this motion, we file the following additional conclusions:

The well-drilling contract referred to in the opinion, in its entirety, reads as follows:

"The State of Texas, County of Harris—This memorandum of agreement made and entered into this 15th day of April, 1910, by and between the Layne & Bowler Company, a corporation, hereinafter called the contractors, and Sylvester Shaffer and Anson Miller of Anahuac, Chambers county, Texas, hereinafter called the owners. Witnesseth:

### "Proposition No. 1.

"1. Contractors agree to furnish all the material, machinery and labor except hereinafter stated necessary to put down on the land of the owners, hereinafter described, a test well for water.

"2. The well shall be put down at a point to be designated by the owners on the following described land, to wit, being James Price 160 survey.

"3. The owners agree to furnish a 25 H. P. J. I. Case traction engine, lumber and nails for derrick.

"4. The contractors and owners each agree to keep a correct account of all moneys spent on this work, including all freight, drayage and transportation to Anahuac and return; and the owners agree to pay to the contractors in cash upon completion of this test, the actual cost of work plus 25%.

### "Proposition No. 2.

"1. The contractors further agree that, in case they encounter sufficient water-bearing strata to justify them doing so, in the opinion of the contractors, from which a supply of water of not less than eight hundred (800) gallons of water per minute can be obtained suitable for irrigation purposes as shown by test well, they will develop same.

"2. The contractors agree to furnish all material, machinery and labor to drill the well; setting same with 11⅝" casing and finishing the same with Layne patent screen, or Layne Shutter screen, at the option of the contractors.

"3. The owners agree to do all hauling in connection with said well and to furnish the derrick; said derrick to remain the property of the owner.

"4. The contractors do not guarantee a well of any certain quantity of water, and this contract is made by the contractors only upon this express understanding: That if, for any reason whatever, the contractors should fail in their attempt to obtain water, the contractors shall be under no obligation to the owners whatsoever, and no liability shall rest upon them on account of the making of this contract. In this connection, however, it is understood and agreed that if the contractors should not succeed in getting a well that will produce eight hundred (800) gallons of water per minute, they are to receive no pay under proposition No. 2 of this contract. They are, nevertheless, to have the right to remove such of their material as they desire.

"5. If, however, the well put down is capable of producing eight hundred (800) gallons of water per minute, when pumped to its capacity, the owner shall pay to the contractors the sum of $799.78, which will include a No. 6 Layne Ball-Bearing New Model Pump and one 24" steel pit properly set by the use of the Layne interlocking coupling device and 20' of screen to each 100' of hole drilled. In addition to this, the owners agree to pay to the contractors the sum of $5.50 per foot on the total depth of the hole, and $5.00 per foot for each additional foot of screen used in excess of 20' to each 100' of hole drilled.

### "Terms.

"6. The owners agree to pay to the contractors full settlement in cash the foregoing amounts as soon as well has tested eight hundred (800) gallons of water per minute.

"In testimony whereof witness our hands and seal this the 15th day of April A. D. 1910.

"[Seal.] [Signed] Layne & Bowler Co.,
"By Jno. Ilfrey, Sec. & Treas.
"Anson Miller, Sylvester Shaffer, Owners."

We decline to make any further finding of fact, believing that all material facts are

stated in the original opinion. We make the additional conclusion as to the contents of the above-mentioned contract in deference only to the insistence of appellants that we have not correctly interpreted the contract.